# FILED

June 10 2009

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 07-0698

## IN THE SUPREME COURT OF THE STATE OF MONTANA

### 2009 MT 204

---

ANN V. BARTELL, Personal Representative
of the Estate of Forbes Bartell,

        Plaintiff and Appellant,

  v.

KATIE ZABAWA,

        Defendant and Appellee.

---

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. CDV 04-1154
Honorable Kenneth R. Neill, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            R. J. "Jim" Sewell, Jr. and Bruce M. Spencer, Smith Law Firm, Helena,
MT

        For Appellee:

            J. Michael Young, Bronson, Luinstra, Rothwell & Young, Great Falls, MT

---

Submitted on Briefs:  October 22, 2008

Decided:  June 10, 2009

Filed:

_____
Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1    Forbes Bartell (Bartell) and Katie Zabawa (Zabawa) were involved in a car accident in October of 2001.  Bartell sued Zabawa in 2004.  The District Court entered a default judgment on May 31, 2006, in favor of Bartell in the amount of $101,300.  The District Court later set aside the default judgment against Zabawa.  Bartell appeals and we affirm.

¶2    Bartell's appeal presents the following issue: *Did the District Court manifestly abuse its discretion in setting aside the default judgment pursuant to Rule 60(b)(6)?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3    Zabawa rear ended Bartell on October 24, 2001, while Bartell waited for children to cross the street. Zabawa reported the accident to her local insurance provider the next day. Safeco, Zabawa's insurance carrier, made numerous attempts to investigate and adjust Bartell's personal injury and property damages claims.  In fact, Safeco paid some of Bartell's medical bills and reimbursed him $2,200 for the damage to his pickup.

¶4    Safeco's activity log indicates no fewer than thirty-four written and telephone contacts with Bartell, attempting to obtain information needed to settle the claim, between October 29, 2001, and June 21, 2004.  Bartell never provided most of the requested information to Safeco.  Bartell never informed Safeco that he was represented by counsel.  Safeco eventually offered Bartell $500 as a final settlement offer.  Safeco sent a letter to Bartell on June 21, 2004, informing him that he needed to reply within

2

thirty days or Safeco would consider the claim closed. Safeco's letter listed a return address of a post office box in Seattle, Washington. Safeco received no response.

¶5 Bartell filed an action on October 11, 2004, and served a summons upon Zabawa personally on November 29, 2004. Zabawa gave the papers to her local agent. The local agent attempted to fax the documents to Safeco. Safeco claims that it never received the complaint at its regional office. The clerk of court entered a default against Zabawa on January 3, 2005. No activity took place on the action for nearly a year and a half. This inactivity prompted the court to issue an order to show cause why the complaint should not be dismissed for lack of prosecution. Bartell filed a status report in which he informed the court that the clerk of court had entered a default against Zabawa. Bartell further informed the court that he had scheduled a hearing to present damages and ask the court to enter a default judgment. The court entered a default judgment against Zabawa on May 31, 2006, after holding a hearing to determine the amount of damages.

¶6 Bartell presented various medical bills at the hearing to support his claim of damages. Bartell had not submitted most of these medical bills to Safeco. The court inquired into Safeco's absence from the proceedings. Bartell's counsel replied "they just fell off the map. I don't know. We communicated with them." Bartell's counsel further claimed that he had asked Safeco to accept service of the complaint and that Safeco had declined. Bartell's counsel surmised that Zabawa may have failed to turn over the summons and complaint to Safeco. Bartell's counsel conceded that he did not know what

had happened, but added "I think after this is over we'll find out probably." Bartell's counsel never mentioned Safeco's thirty-four written and telephone contacts with Bartell. Bartell's counsel also failed to mention that Safeco had paid some of Bartell's medical bills and had reimbursed Bartell for $2,200 to cover the cost of repairs to his pickup. The court awarded $1,300 in medical expenses and $100,000 in general damages for total judgment of $101,300.

¶7 Bartell's counsel next sent a letter to Safeco on October 3, 2006, demanding payment on the default judgment. Bartell sent the letter to a post office box in Spokane, Washington. Safeco claims that it never received this letter, or a second letter from Bartell's counsel sent to the same post office box. Safeco contends that Bartell's counsel sent the letter to an incorrect address. Bartell died in April 2007. Safeco finally received a copy of Bartell's demand letter on September 18, 2007, and started its investigation into the incident. Bartell's counsel sent this third letter on behalf of Bartell's estate to Safeco at a street address in Liberty Lake, Washington.

¶8 Wade Clutter (Clutter), the Safeco representative assigned to the case, determined that Safeco had not received any of the aforementioned documents, including the summons, the complaint, or the demand letters. Clutter speculates that Safeco's local agent in Great Falls had failed to include a proper heading on the cover sheet when he attempted to fax the complaint and summons to Safeco in 2004. Clutter further alleges that, as a result, the summons and complaint did not make it into Safeco's claim file. He

4

contends that Safeco had no contact from Bartell after Safeco sent its letter of June 21, 2004, notifying Bartell that it would close the file if Bartell failed to respond.

¶9 Safeco filed a motion to set aside the default judgment pursuant to M. R. Civ. P. 55(c) and 60(b), on the grounds of mistake, inadvertence, and excusable neglect. Bartell objected on the grounds that the motion was untimely and that the underlying circumstances did not rise to the level of excusable neglect. The District Court ultimately granted Safeco's motion pursuant to M. R. Civ. P 60(b)(6). The court concluded that relief would have been appropriate under M. R. Civ. P (60)(b)(1), but the 60 day appeal period had passed. The court instead relied upon M. R. Civ. P. 60(b)(6), which contains a time limit of "within a reasonable time," and provides for "any other reasons justifying relief."

## STANDARD OF REVIEW

¶10 The principle that "every litigated case should be tried on the merits and thus judgments by default are not favored" guides this Court in considering motions to set aside default judgment. *Essex Ins. Co. v. Moose's Saloon Inc.,* 2007 MT 202, ¶ 17, 338 Mont. 423, 166 P.3d 451. We will reverse a decision to set aside a default judgment only upon a showing of manifest abuse of discretion. *Essex*, ¶ 17. A manifest abuse of discretion is one that is "obvious, evident, unmistakable." *St. James Healthcare v. Cole,* 2008 MT 44, ¶ 21, 341 Mont. 368, 178 P.3d 696.

## DISCUSSION

¶11 **Did the District Court manifestly abuse its discretion in setting aside the**

5

**default judgment pursuant to Rule 60(b)(6)?**

¶12    The manifest abuse of discretion standard of review provides the framework through which we must evaluate the District Court's decision to set aside the default judgment. The District Court entered the default judgment in the first instance. The District Court, in turn, evaluated the claims by Bartell and Safeco, and determined the existence of extraordinary circumstances that supported setting aside the default judgment that it had entered. The District Court relied upon M. R. Civ. P. 60 (b)(6). We must conclude that the District Court obviously, evidently, and unmistakably abused its discretion in setting aside the default judgment in order to reverse.

¶13    In this regard, we further note that the record contains no transcript of any of the hearings in this matter. As a result, we must rely upon the District Court's representations of what occurred and what was said. M. R. App. P. 8(2) imposes the duty on the appellant to provide the Court with a sufficient record on which to decide the issues on appeal. This duty includes requesting any transcripts, or portions of transcripts, necessary to decide the appeal. M. R. App. P. 8(3). We therefore evaluate this appeal based upon the record presented by the parties.

¶14    Safeco cited M. R. Civ. P.  55(c) and 60(b)(1) & (6) in seeking to set aside the default judgment. The District Court recognized the timeliness issue posed by the 60 day appeal time for claims under M. R. Civ. P. 60(b)(1). The court found, however, that the circumstances involved here warranted application of the more flexible "within a

6

reasonable time" standard contained in 60(b)(6). The court nevertheless first proceeded to analyze Safeco's motion under the standards for relief for judgment under subsection (1). These standards require the court to evaluate (1) whether the defendant proceeded with diligence, (2) whether the defendant can establish excusable neglect, (3) whether the judgment would affect the defendant injuriously, and (4) whether the defendant has a meritorious defense. *Kootenai Corp. v. Dayton*, 184 Mont. 19, 26, 601 P.2d 47, 51 (1979).

¶15 Most of the District Court's analysis focused on the issue of excusable neglect with a summary evaluation of the remaining three factors. The court considered the injury to the defendant to be established simply by the size of the default judgment in this case. The court acknowledged that liability seemed "fairly clear," but questioned the $100,000 in general damages in light of the concession by Bartell's counsel at the default hearing that a jury "might come in in the $25,000 range." The court deemed this concession to confirm the existence of a meritorious defense by Safeco to a large portion of the $100,000 award of general damages. The court also concluded that Safeco proceeded with diligence in that Safeco retained counsel and filed the motion to set aside the default "promptly upon receipt of the September 12, 2007, letter."

¶16 With respect to the issue of excusable neglect, the court relied mainly upon this Court's decision in *Blume v. Metropolitan Life Ins. Co.*, 242 Mont. 465, 791 P.2d 784 (1990). The plaintiffs in *Blume* served the complaint and summons on the Insurance

7

Commissioner. The Insurance Commissioner, in turn, mailed the documents to the defendant insurance company. The defendant insurance company had no record of ever receiving the documents. The court in *Blume* ordered the default set aside on the grounds that "[n]egligence or inadvertence directly traceable to a party litigant or his attorney, no less excusable than that disclosed by this record, has many times been held sufficient to warrant the opening of a default." *Blume*, 242 Mont. at 469, 791 P.2d at 787. The District Court found *Blume* "compelling" in light of the fact that the question of what happened to the complaint and summons in each case "remains a mystery." Thus, the District Court considered it "significant" that relief under subsection (1) would have been available to Safeco, but for the time bar.

¶17 The court evaluated Safeco's motion to set aside the default under M. R. Civ. P. 60(b)(6), once it determined that Safeco would have been entitled to relief from the default pursuant to subsection (1), but for the time bar. The court compared the similarity of facts here and those presented in *Maulding v. Hardman*, 257 Mont. 18, 847 P.2d 292 (1993). In *Maulding*, plaintiff's counsel failed to maintain contact with the insurer and comply with its requests for information. Plaintiff filed a complaint and obtained a default judgment without ever having contact with the insurer regarding the action. Plaintiff contacted the insurer only after the court had issued a default judgment, the time for appeal had expired, and payment had been sought. *Maulding*, 257 Mont. at 25-26, 847 P.2d at 297.

8

¶18 The District Court cautioned that it found "nothing remotely approaching misconduct" on the part of Bartell's counsel. The court noted, however, the "similarity of facts." For instance, the court discussed the fact that Bartell, before he retained counsel, had been dealing directly with Safeco. Safeco even paid some of Bartell's bills. These facts prompted the court to conclude that Bartell "was looking to Safeco for recovery." The court also determined that *Maulding* suggests that a court must consider prejudice to the parties. The court in *Maulding* concluded that any prejudice to the parties resulted from plaintiff's counsel's own doing. Plaintiff's counsel had made a demand one week after the accident, had failed to respond to requests for information, and had not filed the action until a year and a half later. *Maulding*, 257 Mont. at 27, 847 P.2d at 298-99. Plaintiff's counsel also delayed service on the complaint for forty days and did not seek entry of default for another two months. *Maulding*, 257 Mont. at 27, 847 P.2d at 299.

¶19 The District Court highlighted the similarities with *Maulding*. The court described Bartell's counsel as "apparently never in a hurry to move the matter along." The court admitted to not knowing when Bartell retained his counsel, but noted that Bartell's counsel had not filed the action until "just days before the Statute of Limitations would have run." The court further admitted that Bartell's counsel timely had perfected service and obtained entry of default. The court cited, however, the fact that "another almost year and one half" had passed before counsel requested a hearing on the default. Indeed,

9

the District Court noted that its issuance of an order to show cause why the case should not be dismissed had triggered Bartell into acting. The court further observed that Bartell waited over four months before attempting to send Safeco a letter concerning the default judgment, and nearly another year before sending any follow up letters. The court attributed "much of the delay" to Bartell.

¶20 The court finally addressed any prejudice in light of the fact that Bartell had died after the court issued the default judgment. The court referred to the fact that the accident had taken place in 2001 and noted all of the intervening factors during the six-year period after the accident. The court concluded that it could not overlook the prejudice to Safeco in allowing the default judgment to stand. The court relied on *Maulding* to support its conclusion that prejudice to a third party constitutes a proper consideration in M. R. Civ. P. 60(b) motions. *Maulding*, 257 Mont. at 26, 847 P.2d at 297.

¶21 The Dissent raises the issue that Zabawa has failed to demonstrate that none of the other subsections of M. R. Civ. P. 60(b) apply. The Dissent points to a statement from *In re Marriage of Waters,* 223 Mont. 183, 724 P.2d 726 (1986), that in order for a party to modify a final judgment under Rule 60(b)(6), "he must first show that none of the other five reasons of the rule apply." *Waters,* 223 Mont. at 187, 724 P.2d at 729. It appears, however, that the Court itself undertook the analysis of whether any of the reasons set forth in M. R. Civ. P. 60(b)(1)-(5) applied to Waters. The Court simply found that "[n]one of the other five reasons listed in the rule apply to this case." *Waters,* 223 Mont.

10

at 187, 724 P.2d at 729. The Court proceeded to evaluate the case under M. R. Civ. P. 60(b)(6), to determine whether extraordinary circumstances warranted relief. *Waters,* 223 Mont. at 187, 724 P.2d at 729.

¶22 None of the Court's Rule 60(b)(6) cases decided over the succeeding twenty years after *Waters* imposed any type of duty upon the moving party to demonstrate that none of the reasons in subsections (1) through (5) applied to their case. *See e.g. Schultz v. Hooks,* 263 Mont. 234, 867 P.2d 1110 (1994); *Karlen v. Evans,* 276 Mont. 181, 190-91, 915 P.2d 232, 238; *Bahm v. Southworth,* 2000 MT 244, 301 Mont. 434, 10 P.3d 99; *Skogen v. Murray,* 2007 MT 104, 337 Mont. 139, 157 P.3d 1143. It was not until *Essex* that the Court interpreted the language in *Waters* to impose an affirmative duty upon the moving party to demonstrate that "none of the other five reasons in Rule 60(b) apply." *Essex,* ¶ 21. This requirement forces a party to address portions of subsection (1) through (5) that may not be connected remotely to their motion.

¶23 The Court in *Essex* noted that "inexplicably" the district court and opposing counsel overlooked the fact that the moving party had not affirmatively addressed subsections (1) though (5). *Essex,* ¶ 24. The lack of any explicit mention in the progeny of cases listed above regarding the use of M. R. Civ. P. 60(b)(6) likely accounts for the failure of the district court or the parties to raise the question of any affirmative duty by the moving party to demonstrate that subsections (1) through (5) did not apply. Despite no mention of any such affirmative duty for almost 20 years of cases, *Essex* resurrected

11

from *Waters* what it interpreted to be an affirmative duty on the moving party to demonstrate that no other subsections of Rule 60(b) applied. Similar to the Court in *Waters*, we instead will evaluate whether any of the reasons in subsections (1) through (5) would apply to Zabawa's motion to set aside the default judgment. *Waters*, 223 Mont. at 187, 724 P.2d at 729.

¶24 The Dissent correctly notes that relief generally is available under M. R. Civ. P. 60(b)(6) "for situations other than those enumerated in the first five sub-sections of the rule." *Montana Prof. Sports, LLC v. Natl. Indoor Football League, LLC,* 2008 MT 98, ¶ 54, 342 Mont. 292, 180 P.3d 1142*, citing *Matthews v. Don K Chevrolet,* 2005 MT 164, ¶ 17, 327 Mont. 456, 115 P.3d 201. In certain circumstances, however, either subsection (1) or subsection (6) may apply, depending upon the particular nature and seriousness of the action or inaction involved. *Karlen*, 276 Mont. at 190, 915 P.2d at 238.

¶25 This Court in *Karlen* conducted an extensive analysis of the interplay between subsection (1) and subsection (6). The Court determined that in the case of counsel's mistake, inadvertence, misconduct, or neglect in the representation of a client either subsection could apply "depending upon the facts, the nature and seriousness of the mistake, inadvertence, misconduct or neglect involved." *Karlen*, 276 Mont. at 190, 915 P.2d at 238. Relief could be available pursuant to M. R. Civ. P 60(b)(6) when a moving party can meet the higher burden of demonstrating extraordinary circumstances, gross neglect or actual misconduct, while showing that they were blameless and acted to set

12

aside the default within a reasonable time. *Karlen*, 276 Mont. at 190, 915 P.2d at 238. The Court left the decision on which subsection applies "to the sound discretion of the trial court." *Karlen,* 276 Mont. at 190, 915 P.2d at 238.

¶26 Counsel for the plaintiffs had led them to believe their case was progressing. Counsel concealed from the plaintiffs the fact that the court had dismissed it. *Karlen*, 276 Mont. at 190, 915 P.2d at 238. The Court affirmed the district court's decision to set aside the judgment pursuant to subsection (6) in light of the "extraordinary circumstances" presented. The Court concluded that attorney misconduct of an egregious nature fell within the "any other reason" clause of subsection (6). *Karlen*, 276 Mont. at 190, 915 P.2d at 238.

¶27 As further noted by *Karlen*, the U.S. Supreme Court has recognized that the "other reason" reason clause in subsection (6) of the federal counterpart to M. R. Civ. P 60(b)(6) "vests power in courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice." *Karlen*, 276 Mont. at 190-91, 915 P.2d at 238 (quoting *Klapprott v. United States*, 335 U.S. 601, 614-15, 69 S. Ct. 384, 390 (1949)). We, too, adopt an interpretation of the "any other reason" clause of subsection (6) that permits a court to vacate a judgment "whenever such action is appropriate to accomplish justice." We emphasize that a party seeking to set aside a judgment pursuant to subsection (6) must do more than demonstrate that it would have prevailed under subsection (1), but for the time bar. The party also must meet the higher standard set

13

forth in subsection (6), that includes the presence of demonstrating extraordinary circumstances that would justify the Court setting aside the judgment. *Karlen*, 276 Mont. at 190, 915 P.2d at 238.

¶28 Finally the Dissent suggests that it agrees with the analysis in *Fuller v. Quire*, 916 F.2d 358 (6th Cir. 1990), that subsection (6) cannot be used to overcome a party's failure to comply with a time limitation. A closer reading of *Fuller*, however, demonstrates that its reasoning fully supports the District Court's action in this case. There the plaintiff filed an action through counsel alleging a personal injury and the defendant answered the complaint. *Fuller*, 916 F.2d at 359. The trial court dismissed the claim shortly thereafter due to the failure by plaintiff's counsel to appear for the "court's docket call." *Fuller*, 916 F.2d at 359. The plaintiff, represented by a different counsel, filed a motion to set aside the dismissal pursuant to Fed. R. Civ. P. 60(b)(6). The trial court determined that "the interests of justice" required reinstatement of the case. *Fuller*, 916 F.2d at 360.

¶29 The defendant argued on appeal that subsection (1) encompassed the plaintiff's motion to set aside the dismissal and that plaintiff had failed to comply with the time limit in subsection (1). *Fuller*, 916 F.2d at 360-61. This failure, argued the defendant, precluded the court from granting relief under subsection (6). The court first rejected the notion that subsection (1) applied and instead agreed with the trial court that subsection (6)'s broad drafting granted discretion to courts "to grant relief from judgment in unusual situations." *Fuller*, 916 F.2d at 361. The court affirmed the trial court's decision to set

14

aside the dismissal of the complaint pursuant to subsection (6). *Fuller*, 916 F.2d at 361.

¶30 Here the District Court initially analyzed Zabawa's claim under M. R. Civ. P. 60(b)(1). The court ultimately granted relief under M. R. Civ. P. 60(b)(6), however, after considering all of the factors leading to the default judgment. For these reasons, we do not require a detailed analysis of subsections (2) though (5) of M. R. Civ. P. 60(b) in this case as the record establishes that Zabawa is not trying to sneak her claim through subsection (6). A successful M. R. Civ. P. 60(b)(6) motion requires that (1) the movant demonstrate extraordinary circumstances, (2) the movant acted to set aside the judgment within a reasonable time, and (3) the movant was blameless. *Karlen*, 276 Mont. at 190, 915 P.2d at 238; Essex, ¶ 25. The District Court compared the similarity of facts here and those in *Maulding* in reaching its conclusion that setting aside the default judgment was warranted.

¶31 We first review the District Court's determination of extraordinary circumstances that would justify relief. We agree with the District Court's assessment that it found "nothing remotely approaching misconduct" on the part of Bartell's counsel. The record does not document the date when Bartell retained counsel. We know, however, that Safeco dealt directly with Bartell until the time it sent its last request for information on June 21, 2004. We do not attribute to Bartell's counsel any failure to respond to Safeco's request for information before June 21, 2004. We nevertheless cannot ignore the fact that Safeco made no fewer that thirty-four attempts to obtain information for settling the

15

claim between October 29, 2001, and June 21, 2004.

¶32 Safeco even paid some of Bartell's medical bills and refunded Bartell $2,200 for vehicle repair. The District Court concluded that Bartell "was looking to Safeco for recovery" in light of these payments. Safeco informed Bartell in its final letter that it would consider the matter closed if it received no response within thirty days. We cannot escape the fact that Bartell's failure to respond, regardless of whether represented by counsel at the time, resembles the attorney's failure to contact the insurer in *Maulding*. Thus, we cannot conclude that the District Court committed a manifest abuse of discretion in determining that extraordinary circumstances supported Safeco's motion to set aside the default. *Essex*, ¶ 17.

¶33 The second element under M. R. Civ. P. 60(b)(6) requires that the movant must act to set aside the judgment within a reasonable period of time depending on the facts of the case. *Essex*, ¶¶ 25, 32. Safeco claims that it first received notice of Bartell's action when it received the letter of September 12, 2007, from Bartell's counsel. Bartell has failed to present any evidence that Safeco had notice of this action before September 12, 2007. Bartell also has failed to explain why he sent the first two demand letters to incorrect addresses, but sent the third demand letter to Safeco's correct address.

¶34 The District Court determined that Safeco had proceeded with diligence based on the fact that Safeco retained counsel and filed the motion to set aside the default "promptly upon receipt of the September 12, 2007, letter." The District Court concluded

16

that 10 days constituted a reasonable amount of time in light of the fact that the accident had occurred six years earlier. Once again we cannot conclude that the District Court committed a manifest abuse of discretion in determining that Safeco acted within a reasonable amount of time when it moved to set aside the default judgment within 10 days of first receiving notice. *Essex*, ¶ 17.

¶35 The third element under M. R. Civ. P. 60(b)(6) requires the movant to be blameless. *Essex*, ¶ 25. Zabawa promptly took the complaint and summons to her local insurance agent after receiving them. The local insurance agent apparently attempted to fax the complaint and summons to Safeco on November 30, 2004. Safeco never processed the complaint.

¶36 The question arises as to whether Safeco can be considered blameless in light of the fact that its local agent received the summons and complaint from Zabawa. The District Court determined that, like in *Blume*, what happened to the complaint and summons here "remains a mystery." The District Court proceeded, therefore, to evaluate blamelessness in the context of the relative prejudice to the parties. The court determined that Safeco would suffer prejudice if the court denied the motion to set aside the default. In particular, the court noted that Bartell's counsel opined at the hearing that a jury "might come in around $25,000." The court contrasted this prejudice to Safeco with any countervailing prejudice to Bartell. Forbes Bartell died in April 2007.

¶37 Bartell cites the Court's conclusion in *Maulding* that nothing indicated that any

17

witness would be unavailable or that the plaintiff would be unable to present evidence as a basis for affirming the default judgment. *Maulding*, 257 Mont. at 27-28, 847 P.2d 298-99. Here, by contrast, Bartell contends that Bartell's death creates severe evidentiary and testimonial problems for the family. Safeco replies that Bartell's family will be able to testify as to their observations of Bartell's condition and that Bartell's medical records may be admitted into evidence.

¶38 The District Court pointed out that Bartell's counsel was "never in any hurry" to get this case resolved. The District Court attributed much of the delay in resolving the case to Bartell. Bartell fails to explain how the District Court abused its discretion in reaching this conclusion. Bartell waited nearly three years after the accident to file his complaint. Bartell waited nearly a year and a half after serving the complaint before requesting a hearing on the default. Bartell waited four months after the court entered the default before sending a demand letter to Safeco. Bartell waited another year before sending any follow up letters to Safeco. These delays by Bartell undermine any notion that the District Court committed manifest abuse of discretion in determining that any prejudice to Safeco outweighed prejudice to Bartell. *Essex*, ¶ 17.

¶39 We agree with the District Court that Safeco would have been entitled to relief pursuant to M. R. Civ. P. 60(b)(1), but for the 60 day time ban. As we noted earlier, however, a district court may also consider whether relief may be granted under subsection (b)(6) if the court finds that the additional considerations required to support a

18

finding under subsection (b)(6) are present as well. A party seeking to set aside a judgment pursuant to subsection (6) must do more than demonstrate that it would have prevailed under subsection (1), but for the time bar. The party also must meet subsection (6)'s higher standard by demonstrating the presence of extraordinary circumstances that would justify the Court setting aside the judgment. *Karlen*, 276 Mont. at 190, 915 P.2d at 238.

¶40 We cannot conclude on the record presented here that the District Court committed an "obvious, evident, unmistakable" abuse of discretion when it set aside the default judgment pursuant to M. R. Civ. P. 60(b)(6). *St. James Healthcare*, ¶ 21.

¶41 Affirmed.

/S/ BRIAN MORRIS

We Concur:

/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER

/S/ HOLLY BROWN
District Judge Holly Brown sitting for
Former Chief Justice Karla M. Gray

Justice Patricia O. Cotter dissents.

¶42 I respectfully dissent. I would reverse and remand with instructions to reinstate the default judgment against Zabawa.

¶43 Zabawa filed a motion to set aside default judgment on the exclusive grounds of mistake, inadvertence, and excusable neglect pursuant to Rule 60(b)(1). In response to Bartell's argument that Zabawa failed to file her motion within sixty days of judgment as required by Rule 60(b)(1), Zabawa asserted the application of Rule 60(b)(6), allowing a default judgment to be set aside for "any other reason." She claimed that, based on *Maulding*, Bartell's improper conduct during claim processing supported her motion and reliance on Rule 60(b)(6).

¶44 The District Court acknowledged that Zabawa argued the applicability of both subsections (1) and (6) of Rule 60(b) and that she had not filed her motion within the sixty days required by 60(b)(1). To determine whether the judgment should be set aside under Rule 60(b), the court listed the four elements that a movant must prove: (a) that she proceeded with diligence; (b) that her neglect was excusable; (c) that she has a meritorious defense to her default; and (d) if permitted to stand, the judgment will affect her injuriously. *Kootenai Corp. v. Dayton*, 184 Mont. 19, 26, 601 P.2d 47, 51 (1979). Applying these elements to the facts of Zabawa's case, but neglecting to address subsection (a), the District Court determined that Zabawa had satisfied subsections (b) through (d), and concluded that "but for" her failure to file her motion within the

20

sixty-day time limit, Zabawa would have prevailed in having the judgment set aside under Rule 60(b)(1).

¶45 The court then proceeded to apply Rule 60(b)(6) which requires movant to demonstrate (1) extraordinary circumstances including gross neglect or actual misconduct by an attorney; (2) that she acted to set aside the judgment within a reasonable time period; and (3) that she was blameless. The court, relying on *Maulding*, concluded that "given the circumstances involved here, Rule 60(b)(6) may be invoked which contains a time limit only of 'within a reasonable time.' " In its ruling, the District Court appeared to analyze only one of the three elements to be considered in a Rule 60(b)(6) analysis but nonetheless concluded that setting aside the default judgment was appropriate. I believe the District Court's errors were two-fold: its initial error was to evaluate the case under Rule 60(b)(6) at all, but, having chosen to do so, it erroneously failed to consider all three required elements. I address only the court's initial error in this dissent.

¶46 We have repeatedly held that relief is available under Rule 60(b)(6) *only* for reasons other than those enumerated in the first five subsections of the rule. *In re Marriage of Waters*, 223 Mont. 183, 724 P.2d 726 (1986); *Koch v. Billings School Dist. No. 2*, 253 Mont. 261, 833 P.2d 181 (1992); *Essex*. In other words, if the circumstances underlying the default judgment raise grounds covered under Rule 60(b)(1)-(5), Rule 60(b)(6) is not available for application. In fact, this Court reiterated this principle just last year, in an Opinion written by the author of this Opinion. In *Profess. Sports v. Nat.*

21

*Indoor Foot. League*, 2008 MT 98, ¶ 54, 342 Mont. 292, 180 P.3d 1142, we said:

> Relief is available under M. R. Civ. P. 60(b)(6) "for situations other than those enumerated in the first five subsections of the rule." *Matthews v. Don K Chevrolet*, 2005 MT 164, ¶ 17, 327 Mont. 456, ¶ 17, 115 P.3d 201, ¶ 17 (internal citations omitted). We adopted in *Matthews* the U.S. Supreme Court's interpretation of this rule. *Matthews*, ¶ 17. The U.S. Supreme Court explained that "[i]n simple English, the language of the 'other reason' clause [of Rule 60(b)(6) is] for all reasons except the five particularly specified [in Rule 60 (b)(1)-(5)] . . . ." *Klapprott v. U.S.*, 335 U.S. 601, 614-15, 69 S. Ct. 384, 390, 93 L. Ed. 266 (1949).

Given this correct statement of the law, I cannot understand or agree with the Court's decision to affirm the District Court's resort to Rule 60(b)(6) because relief would have been available under Rule 60(b)(1), but for the time bar. Opinion, ¶¶ 17 and 39.

¶47 In *Essex*, we explicitly stated that "before a party will be allowed to modify a final judgment under Rule 60(b)(6), *he must first show that none of the other five reasons in Rule 60(b) apply*." *Essex*, ¶ 23 (citing *Waters*, 223 Mont. at 187, 724 P.2d at 729) (examining the meaning of the "other reason" language in Rule 60(b)(6)). In *Waters*, the ex-wife sought to modify a marital dissolution decree approximately four years after it was entered. She argued application of Rule 60(b)(5) or (6), and asked that the decree be modified to allow her to receive the retroactive benefits of the Uniformed Services Former Spouses' Protection Act. This was an issue of first impression for this Court. We determined that none of the reasons set forth in Rule 60(b)(1)–(5) applied to Waters. We then evaluated her case under Rule 60(b)(6) and concluded that extraordinary circumstances existed. We therefore granted Waters the relief she sought. However, we then announced a new prospective rule, stating that "before a party will be allowed to

22

modify a final judgment under Rule 60(b)(6), he must first show that none of the other five reasons in Rule 60(b) apply, *and* he must also demonstrate extraordinary circumstances in his case which justify relief." *Waters*, 223 Mont. at 187, 724 P.2d at 729 (emphasis added).

¶48 The *Waters* ruling is supported by the language of the statute which provides in relevant part:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

Rule 60(b)(1)-(6). As noted in *Koch,* 253 Mont. at 265, 833 P.2d at 183, the statute clearly uses the word "or" at the end of subsection (5), which means that a movant may not obtain relief under 60(b)(6) if the reason for seeking such relief is listed in 60(b)(1)-(5).

¶49 This is not a difficult process to apply. Simply stated, if the reasons for the motion to set aside a judgment are listed in subsections (1)–(5) and meet the criteria established in case law addressing those subsections, the district court renders its ruling based on the requirements of those subsections, including but not limited to any applicable filing

23

deadline. Only after establishing that none of the reasons in subsections (1)–(5) apply to a movant's claim, does the district court even consider subsection (6).

¶50 Applying this rule to the case at bar, Zabawa initially argued that subsection (1) applied to her case. However, upon being challenged for missing the sixty-day filing deadline, she argued that subsection (6) could be used to grant her relief. The District Court appears to have concluded that Safeco's failure on Zabawa's behalf to answer Bartell's complaint constituted a mistake, was inadvertent, and/or qualified as excusable neglect under Rule 60(b)(1). The court then evaluated the case under the four elements listed above in ¶ 44 that a movant must show to obtain relief, and concluded that Zabawa had satisfied those elements. I believe the court erred in doing so. Having established that Zabawa's claim was a subsection (1) claim, the court was required to deny her motion for failing to meet the sixty-day deadline imposed on subsection (1) claims. Once it was clearly established that the reasons in subsection (1) applied, subsection (6) was no longer available for application. The District Court's failure to do this, in my opinion, was an abuse of discretion and effectuated an end run around the sixty-day limit imposed on subsection (1) claims. So, too, does this Court err in affirming the District Court's decision.

¶51 There is no indication that Rule 60(b)(6) was intended to provide an opportunity for movants who missed the sixty-day deadline set forth in subsections (1)–(3). If such was the Legislature's intention, why impose a sixty-day deadline at all? In *Fuller v.*

24

*Quire*, 916 F.2d 358 (6th Cir. 1990), the Sixth Circuit Court of Appeals addressed this conundrum in the context of federal Rule 60(b) which contains a one-year deadline as opposed to our statute's sixty-day deadline. The Circuit Court stated:

> Rule 60(b)(1) authorizes the trial court to grant relief for "mistake, inadvertence, surprise, or excusable neglect," but limits the exercise of that power to one year. Rule 60(b)(6) permits the court to grant relief from a judgment for "any other reason justifying relief from the operation of the judgment." There is no time limit on the exercise of the court's power under Rule 60(b)(6), except that the motion for relief from the judgment must be made "within a reasonable time."
>
> This court has held that 60(b)(6) is to be used "only in exceptional or extraordinary circumstances which are not addressed by the first five numbered clauses of the Rule." *Hopper v. Euclid Manor Nursing Home*, 867 F.2d 291, 294 (6th Cir. 1989). Rule 60(b)(6) specifically states that the grounds under 60(b)(6) are "other" reasons justifying relief. This can mean nothing less than reasons not stated in 60(b)(1) and the other exceptions. A second reason why the plain language of the statute indicates that the exceptions must be mutually exclusive is that the time limitation placed upon the four discrete grounds stated in Rule 60(b)(1) would otherwise be rendered nugatory by action of 60(b)(6), which is without time limit.

*Fuller*, 916 F.2d at 360.

¶52    I agree with the analysis in *Fuller* and would conclude that Rule 60(b)(6) cannot be used to overcome a movant's failure to meet the time limitations on claims covered by the reasons set forth in subsections 60(b)(1)–(3).

¶53    Zabawa and the District Court both rely on *Maulding*, which I find distinguishable. However, to the extent *Maulding* implies that subsection (6) can be used when subsections 60(b)(1)–(5) are applicable or after the sixty-day statute of limitations has run, I would overrule *Maulding*.

¶54 For the foregoing reasons, I would reverse the District Court and remand with instruction to reinstate the default judgment against Zabawa. I therefore dissent.

/S/ PATRICIA COTTER

Justices James C. Nelson and Jim Rice join in the Dissent of Justice Patricia O. Cotter.

/S/ JAMES C. NELSON
/S/ JIM RICE

Justice James C. Nelson, dissenting.

¶55 I dissent. The Court refuses to apply the plain language of M. R. Civ. P. 60(b) and to follow well-established legal principles, and instead creates out of whole cloth a brand new standard of analysis under this Rule. The Court's approach will only sow confusion in this area of law. While I join Justice Cotter's dissent, I offer the following additional discussion of the Court's decision.

¶56 The Court contends that in *Essex Ins. Co. v. Moose's Saloon, Inc.*, 2007 MT 202, 338 Mont. 423, 166 P.3d 451, we "resurrected" from *In re Marriage of Waters*, 223 Mont. 183, 724 P.2d 726 (1986), an affirmative duty on the moving party to demonstrate that no other subsections of Rule 60(b) apply before resorting to subsection (6)—as if to say that this duty was announced in *Waters* and then mysteriously died during the

intervening years. Opinion, ¶ 23. The duty, however, is implicit in Rule 60(b) itself and has always been required. The Rule states that a court may relieve a party from a final judgment, order, or proceeding for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any *other* reason justifying relief from the operation of the judgment.

M. R. Civ. P. 60(b) (emphasis added).

¶57 By its terms, Rule 60(b)(6) applies to "other" reasons justifying relief. It is self-evident that "other" refers to reasons not listed in subsections (1) through (5). *Klapprott v. United States*, 335 U.S. 601, 614-15, 69 S. Ct. 384, 390 (1949) (equating "the language of the 'other reason' clause" with "all reasons except the five particularly specified"). Thus, in order to proceed under subsection (6), the movant must establish that her reason is an "other" reason, i.e., one not specified in subsections (1) through (5). The Court laments that this requirement "forces a party to address portions of subsection (1) through (5) that may not be connected remotely to their motion." Opinion, ¶ 22. But that is exactly what subsection (6) requires before a party may invoke it. *Cf. Epling v. United States*, 172 F.R.D. 220, 222 (W.D. Ky. 1997) (concluding under Fed. R. Civ. P. 60(b) that "in order to invoke the equitable relief afforded by clause (6) it is necessary to

27

establish that such relief is unavailable under the earlier clauses of the rule" (citing Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* vol. 11, § 2864, 362 (2d ed. 1995))).

¶58 The Court announces that when a party fails to meet her duty of showing that none of the first five subsections of Rule 60(b) applies, this Court will take on that task for her. *See* Opinion, ¶ 23 ("[W]e instead will evaluate whether any of the reasons in subsections (1) through (5) would apply to Zabawa's motion to set aside the default judgment."). I cannot agree that it is this Court's (or the trial court's) job to do a party's research and analysis when she has utterly failed to comply with the plain terms of Rule 60(b). It is well-established that "it is not this Court's obligation to conduct legal research on appellant's behalf, to guess as to his precise position, or to develop legal analysis that may lend support to his position." *State v. Doyle*, 2007 MT 125, ¶ 28, 337 Mont. 308, 160 P.3d 516 (alteration and internal quotation marks omitted); *see also In re Marriage of McMichael*, 2006 MT 237, ¶ 12, 333 Mont. 517, 143 P.3d 439 ("We repeatedly have held that we will not consider unsupported issues or arguments."). Accordingly, if a Rule 60(b) movant resorts to subsection (6) without even attempting to show that her reason is an "other" reason (i.e., that the first five subsections of the Rule are inapplicable), then the proper course of action is to deny her motion, not to conduct the omitted evaluation for her.

¶59 Adding further confusion to the analysis, the Court manufactures a new "sneak"

standard for resorting to subsection (6). Specifically, the Court states that when a party "is not trying to sneak her claim through subsection (6)," a detailed analysis of the other subsections is not required. Opinion, ¶ 30. The origins of this standard are a complete mystery, as the Court cites no authority for it. The Court also offers no insight into how a trial court may evaluate whether a party is being "sneaky." Does this require a "sneakiness" hearing? Does the trial court need to enter a finding of fact, or can this Court simply infer it from the record? Who has the burden of demonstrating the existence (or nonexistence) of "sneakiness"? What conduct constitutes improper "sneaking" of a claim through subsection (6)? Today's Opinion creates more questions than it answers.

¶60 In any event, rather than attempt to show that the first five subsections of Rule 60(b) were inapplicable, Safeco sought to show that its motion fit squarely within the substantive elements of subsection (1)—i.e., that its motion was based on "mistake, inadvertence, surprise, or excusable neglect." The District Court agreed with Safeco, as does this Court. Opinion, ¶ 39. In *Karlen v. Evans*, 276 Mont. 181, 915 P.2d 232 (1996), we recognized that subsection (1) and subsection (6) are mutually exclusive. *See Karlen*, 276 Mont. at 186, 915 P.2d at 235 ("[A] party is precluded from relief under subsection (6) when the facts or circumstances would bring the case under one of the first five subsections of Rule 60(b)."); *see also Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 863 n. 11, 108 S. Ct. 2194, 2204 n. 11 (1988) (observing that "clause (6) and

29

clauses (1) through (5) are mutually exclusive"). Thus, since Safeco's motion falls within the substantive elements of subsection (1), its motion clearly cannot be based on "any other reason justifying relief" under subsection (6). *See Klapprott*, 335 U.S. at 613, 69 S. Ct. at 389 (observing that a party may "not avail himself of the broad 'any other reason' clause of 60(b)" if his motion is grounded in subsection (1)).

¶61 In an entirely separate sentence of Rule 60(b), it is said that "[t]he motion shall be made within a reasonable time, and for reasons (1), (2), and (3) when a defendant has been personally served, whether in lieu of publication or not, not more than 60 days after the judgment." Here, Zabawa was personally served, and she delivered the papers to Safeco's local agent, who in turn forwarded the summons and complaint to Safeco. Accordingly, because the procedural 60-day requirement indisputably applies to Safeco's motion, the motion should have been denied.

¶62 The District Court erred, and this Court errs, in refusing to acknowledge this fact. In holding as it does here, the Court renders the procedural time bar a nullity because, according to the Court, whenever a party's motion falls under subsection (1) "but for" the time bar applicable to that subsection, she may leap to subsection (6). Henceforth, after today's decision, there is no instance when the time bar applicable to subsections (1), (2), and (3) would ever bar a Rule 60(b) motion, for the reason that a movant may simply assert that "but for" the time bar, she could have proceeded under subsection (1), (2), or (3) and, because the time bar prevents her from doing so, she may proceed under

subsection (6) instead. Subsection (6), however, was never intended as a means of avoiding the time bar applicable to subsections (1), (2), and (3). *See Liljeberg*, 486 U.S. at 863 n. 11, 108 S. Ct. at 2204 n. 11 ("[A] party may not avail himself of the broad 'any other reason' clause of 60(b) if his motion is based on grounds specified in clause (1)— 'mistake, inadvertence, surprise or excusable neglect.' Rather, 'extraordinary circumstances' are required to bring the motion within the 'other reason' language *and to prevent clause (6) from being used to circumvent the 1-year limitations period that applies to clause (1)*." (emphasis added, some internal quotation marks omitted)).

¶63 As for the Court's analysis under subsection (6), the Court first announces that a court may vacate a judgment whenever doing so is "appropriate to accomplish justice," Opinion, ¶ 27—another amorphous and subjective standard (not unlike the Court's "sneak" standard, Opinion, ¶ 30) which renders the first five subsections of Rule 60(b) superfluous, unless we are to believe that the first five subsections do not already incorporate the concept of "justice." But the Court goes on to acknowledge that in order to prevail under subsection (6), the movant must show that extraordinary circumstances exist which justify relief from the operation of the judgment, that she acted to set aside the judgment within a reasonable period of time, and that she was blameless. Opinion, ¶ 30; *Essex*, ¶ 25. Indeed, the movant must be completely "faultless" for his or her predicament, i.e., for failing to take any steps that would have resulted in preventing the judgment from which relief is sought. *See Pioneer Inv. Services Co. v. Brunswick*

31

*Associates Ltd. Partnership*, 507 U.S. 380, 393, 113 S. Ct. 1489, 1497 (1993); James Wm. Moore et al., *Moore's Federal Practice* vol. 12, § 60.48[3][b], 60-188 (3d ed. 2009). Here, Safeco goes to great lengths to blame everyone involved in this case except the responsible party: itself. As noted, Zabawa was personally served with a summons and complaint, she delivered these papers to Safeco's local agent (just as she had done when reporting the accident), and the local agent forwarded them to Safeco (just as he had done with the accident report). Safeco, in turn, failed to process the paperwork and failed to appear on the complaint. This scenario certainly is not "extraordinary," and these facts clearly do not establish that Safeco is blameless.

¶64    Yet, instead of focusing on these salient facts, Safeco and the Court engage in a blame-shifting critique of the actions of Bartell and his attorney—e.g., Bartell's failure to respond to Safeco's letters and his attorney's failure to send letters to the correct address. *See* Opinion, ¶¶ 31-33, 38. These actions, however, occurred *before* Bartell's complaint was filed and *after* the default judgment was entered. As such, they have no bearing whatsoever on whether Safeco's failure to process Bartell's summons and complaint and appear in court is excused by extraordinary circumstances for which Safeco is blameless. Safeco just flat mishandled a run-of-the-mill daily task and is now trying to avoid the consequences of its actions by redirecting the spotlight away from itself and onto totally irrelevant conduct of Bartell and his attorney. Unfortunately, the Court follows Safeco's lead and not only blames Bartell for Safeco's own failure to act on the faxed paperwork,

32

but also concludes that Safeco, as a result of its own internal error, suffered more prejudice than Bartell (who has since passed away). *See* Opinion, ¶¶ 36, 38. This conclusion is untenable.

¶65  In sum, the rules governing the application of Rule 60(b) are well-established. The Court simply refuses to follow them. Indeed, the Court acknowledges that "*either* subsection (1) *or* subsection (6) may apply" to a given set of circumstances. Opinion, ¶ 24 (emphases added). The Court concludes that Zabawa's motion meets the substantive elements of subsection (1). Opinion, ¶ 39. Under the Court's "either/or" rule, therefore, subsection (6) *cannot* apply. Nevertheless, the Court affirms the District Court's decision to set aside the judgment under subsection (6).[1] Opinion, ¶ 40.

¶66  In dismissing the 60-day time bar applicable to subsection (1) and in misapplying the "extraordinary circumstances" and "blamelessness" requirements of subsection (6), the Court's decision renders these requirements nugatory and injects confusion into our Rule 60(b) caselaw. For these reasons and based on the analysis provided in Justice

---

[1] I note the Court's contention that *Fuller v. Quire*, 916 F.2d 358 (6th Cir. 1990), supports the District Court's approach. Opinion, ¶ 28. Yet, as the Court points out, the *Fuller* court "first rejected the notion that subsection (1) applied." Opinion, ¶ 29. Indeed, the *Fuller* court considered the substantive requirements of subsection (1) and concluded that they did not apply. *See Fuller*, 916 F.2d at 360-61. That fact is a critical distinction between *Fuller* and the present case. Having determined that subsection (1) did not apply, the *Fuller* court turned to subsection (6). Here, however, the District Court determined that subsection (1) *did* apply (but for the 60-day time bar). Accordingly, there was no basis to turn to subsection (6), and the District Court erred in doing so. *Fuller* does not support the District Court's decision or this Court's decision.

33

Cotter's dissent, I would reverse the District Court's order and remand with instructions to deny the motion to set aside the judgment.

¶67     I dissent.


                                        /S/ JAMES C. NELSON


Justices Patricia O. Cotter and Jim Rice join in the Dissent of Justice James C. Nelson


                                        /S/ PATRICIA COTTER
                                        /S/ JIM RICE